# Bartle et al. *versus* Saunders.

1. A neglect by the court, to answer a point, is equivalent to a negative answer of it.

2. A party selling a bill, is not bound to communicate to the purchaser the fact of the insolvency of the parties to it, even if within his own knowledge.

3. The right of reclamation after delivery or payment, exists only when an action of deceit would lie.

4. A man cheated out of his money may sue in *assumpsit* or deceit.

5. A man cheated out of his personal property, may sue in trover, replevin, or deceit.

6. There must be actual artifice, intended and fitted to deceive, before a man can claim that he has been cheated.

ERROR to the Court of Common Pleas of *Crawford county.*

The defendant's family resided in Crawford county, Pennsylvania, while he was temporarily in California.   While there, he sent to his wife, Clarissa Saunders, two several drafts, or bills of exchange, for $100 each, drawn by Adams & Co., of San Francisco, upon Adams & Co., of New York, and payable to the order of his wife, "at sight of this second of exchange, (first and third unpaid,") and dated the 11th of February, 1855, and numbered, respectively, 12,748 and 12,749.   The first series of drafts, of same tenor and date, and for the same money, had been received by the wife previously, and returned to defendant, because, as she informed him, she had learned they were of no value, and could not be disposed of, she having offered to do so, and being told they were worthless, or nearly so.   The defendant had knowledge of the failure of the drawers, and so informed his wife by letter, enclosing the drafts, or while she held them.

[Bartle et al. *v.* Saunders.]

The defendant instructed his wife to dispose of the drafts, and apply the proceeds to his use, except $25, which was to be given to Mrs. Day, whose husband was also in California, and had that amount of interest therein.    These drafts were received by defendant's wife, in August, 1855, and on the 30th she endorsed them to plaintiffs, and received from them therefor, $200 in money, and appropriated it as directed by the defendant.    The plaintiffs, at the time they gave the money, and received the drafts, were not informed of their worthless character, and that they would not be paid, nor that the drawers had failed, but advanced the money in good faith, and in ignorance of these facts. The plaintiffs resided about twenty-five miles from defendant. On the 12th of September, 1855, the plaintiffs endorsed the drafts, and forwarded them for collection to Yelverton & Fellows, of New York, who presented them for payment on the 14th.    Payment being refused, the plaintiffs were then informed of it, and also, that for several months previous, drafts drawn by the California house on the New York house, were not honored.    In the fore part of October following, the defendant returned home, and the plaintiffs gave him notice of the non-payment of the drafts, but he refused to refund them their money, saying he would not, unless compelled thereto.

The bill was not protested for non-payment, nor due notice thereof given to defendant.

On the trial, defendant requested the court, *inter alia*, to charge the jury:

" 3. In order to charge the defendant as endorser, as a party to the bills, it is necessary that the bills should have been regularly presented for payment, and duly protested for non-payment, by a notary public, or other proper authority."

The plaintiff, *inter alia*, requested the court to charge the jury:

" 2. If defendant and his wife, at the time the bill was passed to plaintiffs, and the money by them advanced on it, knew that the drawers and drawees had already failed and stopped payment on these drafts, and this fact was unknown to plaintiffs, and not communicated to them at the time the money was paid on it by them, the defendant is so far guilty of fraud in the transaction, as to preclude him from taking advantage of any want of strict observance of the rules of commercial law, by plaintiffs, as endorsees, and they would be entitled to recover upon the common counts in the narr."

The court did not answer plaintiff's second point, and this raises the question decided in the case.

*Church* and *Hecker*, for plaintiff in error, cited Br. Purd. Dig. 91; Chit. on Cont. 183, 186, 191, 223, 234; 3 Wh. 369;

[Bartle et àl. *v.* Saunders.]

6 Har. & J. 86; Story on Part. 519, 520; *Hellings* v. *Hamilton*, 4 W. & S. 462; 13 S. & R. 528; 2 Kent, 284; 1 Dal. 148; 3 Barr, 11; 8 W. 497; *Van Wart* v. *Smith*, 1 Wend. 219; *Van Wart* v. *Woolsey*, 9 Eng. C. L. R.

*J. W. Farrelly*, for defendant in error, cited Story on Bills, §§ 23, 273, 819; Chit. on Bills, 5th ed., 489; *Union Bank* v. *Hyde*, 6 Wheat. 572; *Lloyd* v. *McGan*, 3 Barr, 482; *Chesner* v. *Noyes*, 4 Camp. 291; *Barton* v. *Baker*, 1 S. & R. 334; *Gibbs* v. *Cannon*, 9 Id. 128.

The opinion of the court was delivered October 28, 1858, by

LOWRIE, C. J.—The plaintiff's chief reliance here, is on the fact that the court did not answer his second point; but this is equivalent to a negative of it, and such was the proper answer. The point requires the court to say, that if the defendant knew the fact of the insolvency of the parties to the bill and did not communicate it to the plaintiff, when selling the bill to him, this is a fraud. In the case of *Smith* v. *Murphy & Co.*, 21 State R. 367, we have shown that this is not so, and have given to the whole subject a careful consideration.

There we showed that the fraud is not in the contract itself, but in some of the previous acts, representations or circumstances, that induced the contract. The right of reclamation, after delivery, or payment, exists only where an action of deceit would lie. As a man cheated out of his money may sue in *assumpsit* or deceit; so one cheated out of his personal property, may sue in trover, or replevin, or deceit. The injuries and remedies correspond in substance. But there must have been actual artifice, intended and fitted to deceive, before a man can claim that he has been cheated. The point put to the court, is therefore, defective of an essential element of fraud, and could not be affirmed. We can hardly think, that the circumstances noticed on the argument but not in the point, could add much strength to the plaintiff's position.

In relation to the points of the case, we do not discover any error prejudicial to the plaintiff.

Judgment affirmed.